IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1998 SESSION

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | No. 02C01-9710-CR-00383 |
| Appellee, | * | Shelby County |
| vs. | * | Hon. James C. Beasley, Jr., Judge |
| MARIA MACLIN, | * | (Second Degree Murder) |
| Appellant. | * | |

FILED

August 21, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

For Appellant:

C. Michael Robbins
Attorney at Law
3074 East Street
Memphis, TN  38128
(on appeal)

Gary W. Ball
and
Jane E. Sturdivant
Attorneys at Law
242 Poplar Avenue
Memphis, TN  38103
(at trial)

For Appellee:

John Knox Walkup
Attorney General & Reporter

Peter M. Coughlan
Assistant Attorney General
425 Fifth Avenue North
Cordell Hull Building, Second Floor
Nashville, TN  37243-0493

Janet S. Shipman
and
Johnny R. McFarland
Assistant District Attorneys General
Criminal Justice Complex
201 Poplar Street, Suite 301
Memphis, TN  38103

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

The defendant, Maria Maclin, was convicted of second degree murder. The trial court sentenced the defendant, who qualified as a violent offender, to twenty-two years imprisonment. A fine of ten thousand dollars was imposed. In this appeal of right, the defendant does not challenge the sufficiency of the evidence but does present the following issues for our review:

(1) whether the trial court erroneously instructed the jury by defining "reasonable" and by providing a "dynamite charge"; and

(2) whether the sentence is excessive.

We find no error and affirm the judgment of the trial court.

The defendant and her family had been feuding with the victim, Glenn Taylor, and his family for many years. On the evening of January 26, 1996, the defendant, the victim, and members of each of their families, attended a basketball game at East High School in Memphis. The families sat on opposite sides of the arena and gestured to each other throughout the game. At its conclusion, the defendant stood in the crowded school parking lot with her sister, Latrice Woods, who accused Kena "Shea" Blakney, the older sister of the victim, of having stolen $100.00 from her. In response, Ms. Blakney accused Ms. Woods of slashing her tires. A fist fight followed. When the victim saw his sister fighting, he intervened, striking either Ms. Woods or the defendant in the process. The defendant then drew her gun and, as the victim attempted to flee, she shot him twice, killing him.

The defense theory was that the victim and his sister were armed and had struck the defendant and her sister with their weapons. Witnesses for the state testified that neither the victim nor his sister were armed and that the victim had

2

turned to run away when he was shot.  No weapon was recovered from the victim.

The autopsy indicated that the victim had been shot twice in the back.


I

The defendant contends that the trial court erred in its response to two

questions from the jury, thereby depriving her of the constitutional right to a trial by

jury.  The state maintains that the trial court acted properly.


(A)

After the trial court charged the jury on second degree murder, it

provided the following instructions on voluntary manslaughter:

> For you to find the defendant guilty of [voluntary
> manslaughter], the state must have proven beyond a
> reasonable doubt the existence of the following
> elements:
>> (1) that the defendant unlawfully killed the
>> alleged victim; and
>> (2) that the killing was intentional or
>> knowing; and
>> (3) that the killing resulted from a state of
>> passion produced by adequate provocation
>> sufficient to lead a reasonable person to act
>> in an irrational manner.

(Emphasis added).


During its deliberations the jury asked the trial court to "[d]efine

reasonable as pertains to 'reasonable person.'"  The state argued for a dictionary

definition to be provided, "[J]ust, proper, ordinary, usual, fit and appropriate to the

end in view...."  The trial court determined that the terms usual, ordinary and rational

fit the connotation of reasonable person.  Neither defense counsel nor the state

objected to the supplemental instruction:

> There is no set definition for reasonable as set forth in
> your question.  Some terms such as ordinary, usual, or
> rational may apply, but the ultimate issue is for you to

3

determine what a reasonable person is.

The trial court, of course, has a duty to give a complete charge of the law applicable to the facts of the case. State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986). It is presumed that the jury follows the instructions of the trial court. State v. Blackmon, 701 S.W.2d 228, 233 (Tenn. Crim. App. 1985); Klaver v. State, 503 S.W.2d 946 (Tenn. Crim. App. 1973). A jury instruction can be found "prejudicially erroneous" only if "it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). In Hodges, our supreme court warned that the instructions should be "read ... as a whole":

> [J]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with common sense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

Id., 944 S.W.2d at 352 (quoting Boyde v. California, 494 U.S. 370, 380-81 (1990)).

Trial courts may provide supplemental instructions in response to jury questions. State v. Forbes, 918 S.W.2d 431, 451 (Tenn. Crim. App. 1995). Trial courts are not required to define or explain words or terms in common use which are understood by persons of ordinary intelligence. State v. Summers, 692 S.W.2d 439, 445 (Tenn. Crim. App. 1985).

Voluntary manslaughter is an intentional or knowing killing committed while under a "state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211. The Sentencing Commission Comments to this section suggest that the basic

4

common law principles of voluntary manslaughter remain intact. Neither the statutory law nor the Tennessee Pattern Jury Instructions provide a definition for the term "reasonable person." See Tenn. Code Ann. § 39-13-211; T.P.I. § 7.06, Instruction on Voluntary Manslaughter.

Under common law, an objective rather than a subjective standard is used to determine whether adequate provocation reduces the offense of first or second degree murder to voluntary manslaughter. See State v. Freddo, 155 S.W. 170 (Tenn. 1912). In Seals v. State, our supreme court referred to an "ordinary [person], of fair average disposition ...." in the context of provocation. 62 Tenn. 459, 462 (1874) (internal quotations omitted). Similarly, in Whitsett v. State, the supreme court held that the person provoked must be "laboring under an adequately aroused passion so great as to obscure his reason." 299 S.W.2d 2, 6 (Tenn. 1957).

In our view, the instruction on "reasonable person," in the context of the entire charge, is not erroneous. That "ordinary, usual, or rational may apply," as indicated in the supplemental charge, is a correct statement of law. Other words such as moderate, fair and sensible would also serve as adequate definitions. American Heritage Dictionary 573 (Office Ed. 1983); Webster's New World Dictionary 399 (Modern Desk Ed. 1976).

(B)

After four and one-half hours of deliberation, the jury asked of the trial court, "What happens if we agree that she is guilty but cannot [agree] on 2nd degree vs. voluntary manslaughter?" In response, the trial judge reread the following sections of the original charge:

> The verdict must represent the considered
> judgment of each juror. In order to return a verdict, it is

5

necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

When you retire to consider your verdict ... you will first inquire, is the defendant guilty of Murder Second Degree as charged in the indictment? ...

If you find the defendant not guilty of this offense, or if you have a reasonable doubt of her guilt of this offense, you will acquit her thereof and then proceed to inquire whether or not she is guilty of Voluntary Manslaughter as included in the indictment.

***

Take the case, consider all the facts and circumstances fairly and impartially and report to the Court such verdict as truth dictates and justice demands.

The defendant contends that the trial court should have inquired whether the jury was, in fact, deadlocked and that the trial court erred by directing the jury to consider second degree murder before voluntary manslaughter.

In State v. Kersey, 525 S.W.2d 139 (Tenn. 1975), our supreme court adopted Sec. 5.4 of the ABA Standards Relating to Trial by Jury, and directed its use by the trial courts faced with deadlocked juries; the court disapproved of the Allen or "dynamite" charge. See Allen v. United States, 164 U.S. 492 (1896); Commonwealth v. Tuey, 62 Mass. 1 (1851). In Kersey, our supreme court ruled that the "dynamite" charge constituted an impermissible, judicially mandated majority verdict and concluded that the only proper inquiry of the jury "as to its progress [is]

6

... whether it believes it might reach a verdict after further deliberations."  Kersey, 525 S.W.2d at 141.

The charge under challenge by the defendant is identical to the Kersey instruction.  Unlike the Allen case, this jury was not instructed to surrender individual judgment.  In the event of an inability to agree on the part of the jury, trial judges may require the jury to continue deliberating and may give or repeat this instruction. Kersey, 525 S.W.2d at 145.  In our view, this instruction was not erroneous.

The instruction that the jury should render a verdict for second degree murder before considering voluntary manslaughter is not erroneous.  This type of "acquittal first" instruction has been repeatedly upheld.  See Harris v. State, 947 S.W.2d 156, 175-76 (Tenn. Crim. App. 1996).  This issue has no merit.

II

Next, the defendant challenges the length of her sentence.  When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct.  Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994).  The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of

7

sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in her own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

At the time of this offense, the presumptive sentence for a Class A felony was the midpoint in the range if there were no enhancement and mitigating factors. Tenn. Code Ann. § 40-35-210(c). Should the trial court find mitigating and enhancement factors, it must start at the minimum sentence in the range and enhance the sentence based upon any applicable enhancement factors and then reduce the sentence based upon any appropriate mitigating factors. Tenn. Code Ann. § 40-35-210(e). While there must be compliance with the 1989 Act documented by the record, the weight given to each factor is discretionary with the trial court. See Ashby, 823 S.W.2d at 169; Tenn. Code Ann. §§ 40-35-209 and -210.

At the sentencing hearing, Icymae Franklin, mother of the victim, testified that her son was a good student and athlete. She suffered deep anguish after his death, has had difficulty working, and had lost seventy pounds. The medical bills for life-saving efforts amounted to $16,000.00. Ms. Franklin asked the trial court to impose the maximum sentence possible.

Patricia Garrett, principal of Lester School where the victim had attended elementary school, testified that she had known the victim since he was five years old. She described the victim as motivated, conscientious, and popular among his classmates. She characterized his death as a devastating event in the

8

community.

Leutissue Elliott, mother of the twenty-four-year-old defendant, testified favorably for her daughter, asserting that she had worked hard to support her two children. She asked the trial court to extend mercy. Reverend Joe Hayes, the pastor at Greater Lakeview Baptist Church, testified that the defendant came from a good family and deserved another chance. Latrice Woods, sister of the defendant, testified that the victim hit her in the head with a gun on the night of the shooting. She contended that the defendant had saved her life by shooting the victim.

The trial court sentenced the defendant as a violent offender. See Tenn. Code Ann. § 40-35-501(i)(1), (2) (No release eligibility for a defendant who commits second degree murder after July 1, 1995; sentence credits shall not exceed fifteen percent). It found that the defendant possessed or employed a firearm during the commission of the offense, had no hesitation in committing an offense when the risk to human life was high, and had committed the offense on school property. Tenn. Code Ann. § 40-35-114(9), (10), & (17). The trial court determined that the circumstances were especially serious because the defendant had chosen to arm herself at a school function, had fired the shot in a high school parking lot, and, due to the crowd in attendance at the game, had endangered others. The trial court placed great weight on these factors and enhanced the sentence to twenty-five years, the maximum possible. Because, however, the trial court found in mitigation that the defendant acted under strong provocation and that substantial grounds existed tending to excuse or justify the conduct but which did not amount to a defense, the sentence was reduced to twenty-two years. Tenn. Code Ann. § 40-35-113 (2), (3).

9

The defendant maintains that the use of a firearm and the commission of the offense on school property should be consolidated into one enhancement factor. We disagree. In our view, the trial court followed the dictates of Ashby, made adequate findings of fact, and adhered to the purposes and principles of the 1989 Act. The enhancement factors and mitigating factors applied by the trial court were appropriate and the sentence, while lengthy, is not unduly harsh given the circumstances of the offense. When the sentence has been administered within the statutory guidelines, the presumption of correctness prevails. See State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991).

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Judge

CONCUR:

_____
Joe B. Jones, Presiding Judge[1]

_____
Jerry L. Smith, Judge

_____

[1]Honorable Joe B. Jones died May 1, 1998, and did not participate in this opinion. We acknowledge his faithful service to this Court, both as a member of the Court and as its Presiding Judge.