STATE of Tennessee, Appellee,

v.

Lorene SUMMERS and Tick Enterprises, Inc., Appellants.

Court of Criminal Appeals of Tennessee, at Jackson.

Jan. 30, 1985.

Permission to Appeal Denied by Supreme Court May 6, 1985.

Michael F. Pleasants, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, Charles W. Boyle, Atlanta, Ga., for appellants.

W.J. Michael Cody, Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Kathleen O. Spruill, Dan L. Newsom, Asst. Dist. Attys. Gen., Memphis, for appellee.

## OPINION

SCOTT, Judge.

The appellant, Lorene Summers, an employee of Airways Bookmart, was convicted of distributing obscene matter and received a sentence of sixty days in the Shelby County Correctional Center. Tick Enterprises, Inc., the corporate owner of Airways Bookmart, was convicted of possession of obscene matter with intent to distribute and was fined $50,000.00. Much

aggrieved by their convictions, they have presented eight issues for our consideration.

In the first issue the appellants contend that a minimum fine of $10,000.00 and a maximum fine of $50,000.00 for a misdemeanor charge of possession of obscene matter with intent to distribute, and a minimum sentence of sixty days imprisonment for distributing obscene matter are excessive and violative of the Eighth Amendment of the United States Constitution and Article I, § 16 of the Tennessee Constitution, as cruel and unusual punishments.

TCA § 39–6–1104(d) sets the penalties for violations of the law for the knowing sale, distribution, exhibition or display, or possession with intent to distribute, exhibit or offer to distribute any obscene matter. The punishment for the first offense is imprisonment in the county jail or workhouse for a period of sixty days. TCA § 39–6–1104(d)(1). The punishment for a second offense is incarceration for eleven months and twenty-nine days in the county jail or workhouse. TCA § 39–6–1104(d)(2). The third or subsequent offense is denominated a felony and is punishable by imprisonment in the penitentiary for a definite term of not less than two nor more than five years. TCA § 39–6–1104(d)(3). The violators are divided into Classes A and B. The Class A violator is one in which the obscene materials represent 25% or less of the stock in trade, inventory and sales of the violator during any given twenty-four hour period. TCA § 39–6–1104(e)(1). Class B violators are all others. TCA § 39–6–1104(e)(1). A Class B violator is not eligible for suspension of sentence, probation, release on parole, participation in any program by which he enjoys the privilege of supervised or unsupervised release in the community prior to the expiration of his sentence, good, honor or incentive time credit, or any other credit toward the expiration of the sentence. The Class B violator's sentence must be served day for day. TCA § 39–6–1104(e)(2). Upon conviction, corporations or other business entities shall be fined not less than $10,000.00 nor more than $50,000.00. TCA § 39–6–1104(f).

The appellants rely upon *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In that case the United States Supreme Court evaluated the South Dakota recidivist statute, under which recidivists receive a life sentence without the possibility of parole. In finding that the statute was unconstitutional as applied to Helm, the Supreme Court evaluated the statute by looking to (1) the gravity of the offense and the harshness of the penalty; (2) the sentence imposed for other crimes in the same jurisdiction; and (3) the sentences imposed for the same crime in other jurisdictions. 103 S.Ct. at 3011.

In considering the constitutionality of legislative acts, courts must concede wide ranging discretion to the legislature and favor the constitutionality of statutes. *Knoxtenn Theatres, Inc. v. McCanless,* 177 Tenn. 497, 151 S.W.2d 164, 167 (1941). It is the duty of the courts to hold acts of the legislature constitutional if it is possible to do so, resolving every reasonable doubt in favor of constitutionality. *Unicoi County v. Frye,* 197 Tenn. 117, 270 S.W.2d 381, 383 (1954). The cardinal principal of statutory construction is to save and not to destroy. 16 CJS (Constitutional Law) § 95, p. 295.

Considering the evaluative factors set forth in *Solem* in light of these principles, we turn to the first factor.

In *Roth v. United States,* 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957), the United States Supreme Court noted that while there is no conclusive proof of a connection between antisocial behavior and obscene material, the legislature could quite reasonably determine that such a connection might exist. It is not improper for a court to permit a legislature to act on such a conclusion. Assuming as we must that the Tennessee General Assembly reached a similar conclusion about the nexus between obscene material and antisocial behavior, there is nothing invalid about the penalty provision. Indeed, the United States Supreme Court has recognized that, outside the context of capital punishment, "successful challenges to

the proportionality of particular sentences should be exceedingly rare". *Hutto v. Davis,* 454 U.S. 370, 374, 102 S.Ct. 703, 705, 70 L.Ed.2d 556 (1982), citing *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 383 (1980).

■ The General Assembly was free to find the offenses relating to the distribution of obscene material to be of sufficient gravity to merit jail sentences for natural persons and hefty fines for legal entities. The first prong of the *Solem* test is not violated by the punishment provisions of TCA § 39–6–1104.

■ Nor does the statute violate the second prong of the *Solem* test. One of the aspects of the legislative function is to determine which offenses are more serious and hence deserving of more stringent penalties. For comparison, the appellants have pointed to the offense of driving under the influence of an intoxicant as proscribed in TCA § 55–10–401. The penalty for the first offense is a fine of not less than $250.00 nor more than $1,000.00, confinement in the county jail or workhouse for not less than forty-eight hours, nor more than eleven months and twenty-nine days, and prohibition from driving for a period of one year. TCA § 55–10–403(a). The appellants contend that this offense has "received extraordinary publicity" and notes that Tennessee "supposedly has one of the stiffest penalties" for DUI. They point out that the "stiff" penalty is *"two days"* in jail without eligibility for suspension of sentence or probation until an offender has fully served day for day that minimum sentence. TCA § 55–10–403(b)(1).

The appellants would have this Court to somehow weigh the gravity of driving an automobile while intoxicated on the one hand against the distribution of obscene materials on the other and find that the sentences provided by statute are unconstitutional. However, what the appellants are asking this Court to do is to compare apples and oranges and to determine what, in our view, would be a proper minimum sentence in obscenity cases. The appel-

lants even suggest that "(a)ny person convicted of obscenity should be allowed to petition the court for probation, suspension and other applicable relief", in direct contravention of TCA § 39–6–1104(e)(2). However, these are legislative judgments and are not within the province of the courts to determine.

Attached to the appellants' brief is also a digest with what purports to be a complete listing of all the misdemeanor type offenses set forth in our criminal code. These offenses range from wanton mutilation of a dead body, TCA § 39–6–704, to use of a fluroscopic shoe-fitting machine in the sale or fitting of shoes. TCA § 39–6–106. The penalties range from a minimum fine of two dollars for pulling down another's fence or opening and leaving open his gate without permission, TCA § 39–3–1322(a), to three years incarceration and a $3,000.00 fine for defilement of the United States or Tennessee flags, TCA § 39–5–845(b), to a maximum of eleven months and twenty-nine days imprisonment and a $5,000.00 fine for diversion of electric power with intent to defraud. TCA § 39–3–938(c).

The appellants also point to the general misdemeanor penalty statute as an indication that this penalty is excessive. TCA § 39–1–202 provides that the penalty for a misdemeanor, for which the punishment is not otherwise prescribed by statute, shall be imprisonment in the county jail or workhouse not more than one year or by fine not exceeding $1,000.00 or both, in the discretion of the court. It is interesting to note that the period of incarceration specified in TCA § 39–1–202 is longer than the period specified for a first offense under TCA § 39–6–1104(d)(1).

■ While the fine specified in TCA § 39–6–1104(f) is greater than the fine specified in any of the cited statutes, the fine under the obscenity statute is levied solely against corporations and other entities and not against individuals. Since corporations cannot be incarcerated, fines are the only punishment which can be levied against

them and it would seem to be necessary that the fine be substantial for the corporation to feel any sting from the punishment.

■ It is a legislative judgment whether the use of a fluoroscopic shoe-fitting machine is more serious than distribution of obscenity or vice versa. The legislature has obviously found the latter to be more serious.

■ Compared to the sentences imposed for other crimes in Tennessee, it cannot be said these penalty provisions are excessive.

■ Finally, as compared to the other sentences imposed for the same crime in other jurisdictions, we note that other states also impose severe penalties for obscenity violations. The penalty in North Dakota is a maximum of one year imprisonment and/or a fine of $1,000.00 for individuals, N.D.Cent.Code § 12.1–32.01(5), and a maximum fine of $15,000.00 for organizations. N.D.Cent.Code § 12.1–32–01.1. The penalties in Arizona, where production of obscene items is a Class 6 felony, Ariz.Rev. Stat.Ann. § 13–3502, are imprisonment for a first offense for one and one-half years, Ariz.Rev.Stat.Ann. § 13–701(B), and a fine not exceeding $150,000.00. For enterprises, the penalty is a fine not to exceed a million dollars. Ariz.Rev.Stat.Ann. § 13–804. In Tennessee no fines are imposed on individuals. TCA § 39–6–1104(d)(1)(2) and (3). The fines imposed on corporations are not excessive vis-a-vis the fines imposed elsewhere. The sentence is not disproportionate to the sentences imposed in other jurisdictions. This issue has no merit.

In the next issue the appellants contend that the exemptions under TCA § 39–6–1117 are overbroad and are improper classifications, violating the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution.

■ On two prior occasions this Court has specifically held that the provisions of the exemption section are not overbroad and not violative of either the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment of the Unit-

ed States Constitution. *State v. Davis*, 654 S.W.2d 688, 692 (Tenn.Cr.App.1983), *State v. Hunt*, 660 S.W.2d 513, 517–518 (Tenn.Cr. App.1983). This issue has no merit.

■ In the next issue the appellants contend that the punishment section is unconstitutional, in violation of the Equal Protection and Due Process Clauses of the Tennessee Constitution, Article I, § 8, and the Fourteenth Amendment of the United States Constitution. Again, these issues have previously been settled by this Court in *State v. Davis*, supra, 654 S.W.2d at 694, and *State v. Hunt*, supra, 660 S.W.2d at 518. This issue has no merit.

In the next issue the appellants contend that it was error for the court below to deny the motion for judgment of acquittal because the material in question was designed to appeal to such a bizarre deviant group that the experience of the trier of fact (the jury) was plainly inadequate to judge whether it appealed to the prurient interest of the average person.

This case involved the sale of one motion picture film entitled "Candy's Maid". The film depicted a transsexual man who apparently had had hormone treatments to increase the size of his breasts. In the opening scene, this man, dressed in the clothing of a woman, asked his "maid", another man dressed as a woman, for some coffee. The maid spilled the coffee in his master's lap. For this offense, the master then pulled down the servant's panties and administered a whipping with his hand, causing a blistering of the servant's buttocks. The servant was then forced to suck the heel of his master's high heel shoe and to lick the sole of the shoe. Subsequently, the servant was required to suck the master's penis and to lick the master's anus. The master then digitally penetrated the servant's anus and had anal intercourse with the servant, after which they both masturbated to orgasm and the film ended.

■ If evidence that the film was designed for and primarily disseminated to a clearly defined deviant sexual group, then the prurient-appeal requirement can

be satisfied by permitting the material in question to be assessed in terms of the interests of the group. *Mishkin v. State of New York*, 383 U.S. 502, 509, 86 S.Ct. 958, 963–964, 16 L.Ed.2d 56 (1966). The defendant has the burden of proving that he comes within an exception to a criminal statute. *Terrell v. State*, 210 Tenn. 632, 361 S.W.2d 489, 492 (1962). There is no evidence in the record that this film was designed for or primarily disseminated to a particular sexually deviant group. Dr. Eugene E. Levitt, the Director of the Section of Psychology, Department of Psychiatry, at the Indiana University of Medicine, testified as an expert witness, as he had in previous cases, e.g. *State v. Hunt*, supra, 660 S.W.2d at 516. Dr. Levitt testified that he frequently used erotica such as this film in his teaching and treatment of people with sexual dysfunctions. He contended that, in his opinion, the film had both educational and scientific value. However, it was his position that *any* film depicting *any* sexual activity had educational and scientific value. However, even after taking that position, Dr. Levitt testified that he could not imagine what sort of illness a patient would have for him to show "Candy's Maid" to a patient.

In the absence of such evidence, the prurient interest must be determined by the standards of "average persons". TCA § 39–6–1101(5)(A). No argument has been made that the jury did not consist of "average persons", who could apply "contemporary community standards" to determine whether "the work, taken as a whole, appeals to the prurient interest". TCA § 39–6–1101(5)(A).

The United States Supreme Court has indicated that there may be an extreme case of materials directed at such a bizarre deviant group that the experience of the trier of fact may be plainly inadequate to judge whether the material appeals to the prurient interest. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56, fn. 6, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446 (1973). However, we find it difficult to believe that there is anywhere in the legal spectrum some issue

that is totally beyond the comprehension of a properly selected jury. The jury, that unique creature of the Anglo-American judicial tradition, has been called upon to determine everything from whether a murderer was sane or insane at the time of the crime, to complex issues in anti-trust litigation. Yet, the appellants would have this Court believe that it is impossible for a jury of Shelby County citizens to look at a film depicting masturbation, fellatio, anal intercourse and sadomasochism and determine whether it was obscene. This argument is clearly without merit.

In the next issue the appellants contend that the trial judge erred by failing to charge their requested jury instruction explaining the terms "serious literary, artistic, political or scientific value", as these terms are included in the test for whether material is obscene under TCA § 39–6–1101(5)(C).

Where words and terms are in common use and are such as can be understood by persons of ordinary intelligence, it is not necessary, in the absence of anything in the charge to obscure their meaning, for the court to define or explain them. *Robinson v. State*, 513 S.W.2d 156, 158 (Tenn. Cr.App.1974). When the charge as given fully and fairly states the applicable law, it is not error to refuse to give a special request. *Bostick v. State*, 210 Tenn. 620, 360 S.W.2d 472, 477 (1962). This issue has no merit.

Next, the appellants contend that the trial judge erred by failing to give their requested charge that contemporary community standards are not to be applied to the third part of the obscenity test, i.e., "whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value". TCA § 39–6–1101(5)(C).

The "test" for what is obscene found in TCA § 39–6–1101(5)(A), (B) and (C) is derived from the United States Supreme Court's three part test in *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973). Literary, artistic, political or scientific value are not discussed in

*Miller* in terms of contemporary community standards. *Smith v. U.S.*, 431 U.S. 291, 97 S.Ct. 1756, 1764, 52 L.Ed.2d 324 (1977).

While the trial judge did not give the requested charge, the charge as given did not indicate that contemporary community standards are applicable to the "serious literary, artistic, political or scientific value" determination. As to this issue, the trial judge charged the jury as follows:

As stated heretofore, the Constitution protects all ideas no matter how unorthodox or controversial so long as they have the slightest redeeming social importance. Further, under our Statute, and with regard to the third element stated above, before the subject material can be found to be obscene, it must be proven that the work, taken as a whole, lacks serious literary, artistic, political or scientific value beyond a reasonable doubt.

Thus, this issue is without merit.

In the next issue the appellants contend that the state failed to carry the burden of proof to show scienter with respect to both appellants. "Scienter", as commonly used, imports "knowledge", "knowingly", or "guilty knowledge". 79 CJS (Scienter) p. 456.

Knowledge of an existing condition generally means that from one's relation to it, association with it, control over it or direction of it, he has obtained such actual personal information about the condition as to give him knowledge concerning it. 51 CJS (Knowledge) p. 538. "Knowingly" simply means that state of mind wherein the person charged was in possession of facts under which he was aware he could not lawfully do the act charged. *State v. Smith*, 119 Tenn. 521, 105 S.W. 68, 69 (1907). The obscenity law itself defines "knowingly" as "having actual or constructive knowledge of the subject matter". "A person shall be deemed to have constructive knowledge of the contents if he has knowledge of facts which would put a reasonable and prudent man on notice of the suspect nature of the material." TCA § 39–6–1101(3).

While the state is required to show that a defendant "knowingly" violated the obscenity statutes, TCA § 39–6–1104(a), the state is not required to show that the accused knew that the materials were legally obscene. Rather, the state must only show that he had actual or constructive knowledge of the character of the materials. Belief as to the obscenity or non-obscenity of the materials is irrelevant. *Hamling v. United States*, 418 U.S. 87, 119–120, 94 S.Ct. 2887, 2909, 41 L.Ed.2d 590 (1974).

An examination of the box in which the film was packaged and the color pictures of fellatio and anal intercourse in progress appearing thereon would reveal to the most casual observer the nature of the activities shown on the film. Furthermore, one of the officers recounted hearing Ms. Summers tell him to look at the back of the boxes if he wanted to know what was on the films. She also said she had seen "many, many" films of that nature during her employment at the store. This issue is patently without merit.

In the final issue the appellant, Ms. Summers, contends that she should have been granted Class A status.

At the sentencing hearing the appellant did not offer any proof concerning whether the stock in trade, inventory, and sales during any twenty-four hour period were 25% or less. Rather, she relied upon the proof presented at trial. That proof revealed that the only materials found in the entire store were obscene in nature. The statute clearly provides that "(u)pon application for sentencing as a Class A violator, ... such violator shall have the burden of proving his classification". TCA § 39–6–1104(e)(1). The appellant has failed to carry her burden of proof to show that she was a Class A violator. This issue has no merit.

Finding no merit to any of the issues, the judgment is affirmed.

DAUGHTREY and TATUM, JJ., concur.