IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 3, 2004

**STATE OF TENNESSEE v. TERRANCE D. NICHOLS**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-07321      Bernie Weinman, Judge**

_____

**No. W2003-01043-CCA-R3-CD  - Filed March 8, 2005**

_____

The appellant, Terrance D. Nichols, was convicted by a jury in the Shelby County Criminal Court
of premeditated first degree murder and sentenced to life imprisonment.  On appeal, the appellant
contends that (1) the trial court erred by refusing to instruct the jury that "reflection" in the context
of the instruction on premeditation means "careful consideration," and (2) the trial court committed
plain error by permitting the State to engage in improper and prejudicial argument in its summation
to the jury.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial
court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and
THOMAS T. WOODALL, J., joined.

C. Michael Robbins (on appeal) and Steven M. Temple (at trial), Memphis, Tennessee, for the
appellant, Terrance D. Nichols.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General;
William L. Gibbons, District Attorney General; and Lee Coffee, Assistant District Attorney General,
for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The instant case arises from the shooting death of the victim, Tom Wilson.  Viewed in the
light most favorable to the State, the evidence adduced at trial revealed that the victim and his
brother, Larry Wilson, were self-employed mechanics who repaired vehicles in the parking lot of the
AutoZone on Raines Road in Memphis.  On May 18, 2002, in "the early part of the morning," the
eighteen-year-old appellant brought his Buick Century to AutoZone for repairs.  The victim worked
on the appellant's vehicle, replacing the harmonic balancer.  The appellant had purchased the

harmonic balancer; however, the part was the wrong shape and did not fit properly. When the victim attempted to remove the harmonic balancer, it broke. Thereafter, the appellant and the victim became "involved in a discussion" about who was going to pay for a new harmonic balancer. According to witnesses, the men did not argue, shout, use profanity, or lose their tempers. However, Gwendolyn Clemons, who was also having her vehicle repaired that day, testified at trial that the appellant commented that if the victim did not fix his vehicle, "he was going to kill him."

Following the discussion, the appellant walked to the rear of his vehicle and returned with a rifle. The victim raised his arms and said, "[W]ait, whoa, don't shoot me over your car." The appellant then attempted to shoot the victim, but the rifle jammed. Fumbling with the rifle, the appellant told the victim, "[Y]ou better hope this mother f***er don't shoot." Eventually, the appellant was able to get the gun to fire, and he shot the victim five or six times. The victim fell onto the hood of a nearby vehicle and slid to the ground. As the victim lay on the ground, the appellant shot the victim several more times. When the appellant had emptied the rifle of bullets, he said, "I told you." The appellant then returned to the rear of his vehicle, placed the rifle in the trunk, and walked "briskly" around the corner, leaving his vehicle in the parking lot. According to witnesses, the appellant shot the unarmed victim approximately nine times. After the shooting, a security guard at AutoZone telephoned 911. Within minutes, police and paramedics arrived, and the victim was pronounced dead at the scene.

Thereafter, Memphis Police Officer Mark Bogan ran a check on the appellant's license plate number, obtained the appellant's address, and drove to the appellant's house. When Officer Bogan arrived at the house, the appellant's parents came outside and informed him that the appellant was not at home. The appellant's parents then consented to a search of the house, but the appellant was not found in the house. Officer Bogan returned to the crime scene. Upon learning that the appellant had telephoned his mother directly after the shooting, officers took his mother to the homicide office to give a statement. At approximately 11:30 p.m., the appellant voluntarily came to the police station with his father and was arrested for the victim's murder.

At the crime scene, officers collected a .22 caliber Marlin rifle with a "broken bullet in the chamber" and nine spent shell casings. These items and bullets recovered from the victim's body were submitted to the Tennessee Bureau of Investigation (TBI) Crime Laboratory for identification and comparison. At trial, TBI Special Agent Dinnah Caluag, a forensic scientist specialized in firearms identification, opined that the bullets had been fired from the rifle found at the scene. Assistant Shelby County Medical Examiner Teresa Campbell testified at trial that the victim died as a result of multiple gunshot wounds which damaged his right lung and liver. Dr. Campbell further testified that the lack of soot and stippling on the victim's skin and clothing indicated that the victim was shot from a distance of at least two feet.

On September 10, 2002, the appellant was indicted for the first degree murder of the victim. A jury subsequently convicted the appellant as charged and sentenced him to life imprisonment. The appellant now appeals, arguing that (1) the trial court erred by refusing to instruct the jury that "reflection" in the context of the instruction on premeditation means "careful consideration," and

(2) the trial court committed plain error by permitting the State to engage in improper and prejudicial argument in its summation to the jury.

## II.  Analysis

### A.  Jury Instruction

First, we will address that appellant's contention that the trial court erred by refusing to instruct the jury that "reflection" in the context of the instruction on premeditation means "careful consideration."  The trial court instructed the jury on first degree murder and premeditation pursuant to the Tennessee Pattern Jury Instructions, defining a premeditated act as

> one done after the exercise of reflection and judgment.  Premeditation means that the [intent] to kill must have been formed prior to the act itself.  It is not necessary that the purpose to kill pre-existed in the mind of the accused for any definite period of time.  The mental state of the accused at the time he allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.  If the design to kill was formed with premeditation, it is immaterial that the accused may have been in a state of passion or excitement when the design was carried into effect.  Furthermore, premeditation can be found if the decision to kill is first formed during the heat of passion, but the accused commits the act after the passion has subsided.

See T.P.I. - Crim. 7.01(b) (6th ed. 2001).

After beginning deliberation, the jury submitted a written question asking the trial court for "clarification on the legal terms 'reflection' and 'judgment' in the definition of 'premeditated.'"  The jury also informed the trial court that it would be unable to reach a verdict that evening and asked to continue its deliberation the next day.  The following morning, in a jury-out hearing, defense counsel submitted a request that the trial court provide the following definitions obtained from Webster's American Dictionary, College Edition:

1.     Reflection - 1. A fixing of the thoughts on something; *careful consideration*.  2. A thought occurring in consideration or meditation.

2.     Judgment - 1. The ability to judge, make a decision, or form an opinion objectively or wisely, especially in matters affecting action; good sense; discernment. 2. The forming of

> an opinion, estimate, notion, or conclusion, as from
> circumstances presented to the mind.

(emphasis added).  Relying on the definitions provided by this court in State v. Daryl Keith Holton, No. M2000-00766-CCA-R3-DD, 2002 WL 1574995, at *19 (Tenn. Crim. App. at Nashville, July 17, 2002), aff'd, 126 S.W.3d 845 (Tenn. 2004),[1] the trial court denied defense counsel's request and instructed the jury as follows:

> [I]n context with the law on premeditation, the natural and ordinary
> meaning of reflection and judgment are consistent with the dictionary
> definition of reflection as the fixing of thoughts on something.  And
> judgment as the forming of an opinion, estimate, notion, or
> conclusion, as from circumstances presented to the mind.  That's the
> ordinary dictionary definitions of those terms.

The appellant contends that the trial court erred by refusing to instruct the jury that "reflection" means "careful consideration."

A defendant has a "constitutional right to a correct and complete charge of the law."  State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990).  In determining whether jury instructions are erroneous, this court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law.  State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998).  When confronted with questions from the jury regarding the definition of legal terms, it is appropriate for a trial court to provide the jury with supplemental instructions after consultation with counsel.  State v. Pamela Sue King, No. M2000-00148-CCA-R3-CD, 2001 WL 1398135, at *6 (Tenn. Crim. App. at Nashville, Nov. 9, 2001).  However, a trial court is not required to define or explain words or terms in common use which are understood by persons of ordinary intelligence.  State v. Summers, 692 S.W.2d 439, 445 (Tenn. Crim. App. 1985).

We conclude that the trial court's supplemental instruction defining "reflection" as "the fixing of thoughts on something" was not erroneous.  The definition provided the natural and ordinary meaning of the word within the context of the first degree murder statute.  See Tenn. Code Ann. § 39-13-202(d) (2003).  It did not mislead the jury as to the applicable law, nor did it fail to fairly submit the legal issue.  See Vann, 976 S.W.2d at 101.  This issue is without merit.

### B.  Improper Closing Argument

Next, the appellant complains that the State made several "improper and prejudicial" remarks in its summation to the jury.  The appellant concedes that he failed to object to any of the allegedly

---

[1]The Tennessee Supreme Court released its opinion in State v. Holton, 126 S.W.3d 845 (Tenn. 2004), while the appellant's case was pending on appeal.  Although the supreme court affirmed Holton's convictions and sentences, the court did so without discussing the definition of "reflection" in the context of premeditation.

inappropriate statements or challenge the statements in his motion for new trial. Ordinarily, absent a contemporaneous objection, the issue would be waived. See Tenn. R. App. P. 36(a); State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992). However, the appellant asks this court to address the alleged misconduct as plain error.

Rule 52(b) of the Tennessee Rules of Criminal Procedure provides that this court may address "[a]n error which has affected the substantial rights of an accused . . . at any time, even though not raised in the motion for new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." When determining whether an error constitutes plain error, the following factors should be considered:

> (a)  the record must clearly establish what occurred in the trial court;
> (b)  a clear and unequivocal rule of law must have been breached;
> (c)  a substantial right of the accused must have been adversely affected;
> (d)  the accused did not waive the issue for tactical reasons; and
> (e)  consideration of the error is "necessary to do substantial justice."

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); see also State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (adopting the Adkisson test for determining plain error). The presence of all five factors must be established, and consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. Smith, 24 S.W.3d at 283. Moreover, the error "'must be of such a great magnitude that it probably changed the outcome of the trial.'" Adkisson, 899 S.W.2d at 642 (quoting United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988)). Upon review of the record, we conclude that the alleged misconduct did not affect the outcome of the appellant's trial.

It is well-established that closing argument is a valuable tool for both parties during a trial; thus, counsel is generally given wide latitude during closing argument, and the trial court is granted wide discretion in controlling closing arguments. State v. Carruthers, 35 S.W.3d 516, 577-78 (Tenn. 2000) (appendix). "Notwithstanding such, arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Goltz, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003).

"In determining whether statements made in closing argument constitute reversible error, it is necessary to determine whether the statements were improper and, if so, whether the impropriety affected the verdict." State v. Pulliam, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996) (citing State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978)). The following factors must be considered in making this determination:

(1)    The conduct complained of viewed in context and in light of the facts and circumstances of the case.
(2)    The curative measures undertaken by the court and the prosecution.
(3)    The intent of the prosecution in making the improper statement.
(4)    The cumulative effect of the improper conduct and any other errors in the record.
(5)    The relative strength or weakness of the case.

Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984).

In the instant case, the appellant challenges the following remarks made by the prosecutor during the State's closing argument:

(1)    "The judge is the judge of the law."
(2)    "A presumption of innocence does not mean necessarily actual innocence."
(3)    "[I]f there is ever, ever, ever, a case anywhere that you can decide that be[yond] any doubt to an almost absolute certainty that the defendant is guilty of a crime, that this is the case that you heard the last day and a half."
(4)    The State's "misstatement" of witness Gwendolyn Clemons' testimony.
(5)    "This man walks over [the victim], if you want to call [the appellant] a man, stands over the victim and empties his rifle, kept pulling the trigger until he ran out of bullets."

Upon review of the record, we conclude that none of the challenged statements affected the outcome of the appellant's trial. Following the arguments of counsel, the trial court properly instructed the jury regarding their duty as the judges of fact and law, the presumption of innocence, and the State's burden of proof. The trial court also instructed the jury that the "[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and applying the law, but they are not evidence. If any statements were made that you believe were not supported by the evidence, you should disregard them." In light of these instructions and the overwhelming evidence of guilt, we conclude that the prosecutor's remarks did not constitute plain error. This issue is without merit.

-6-

## III.  Conclusion

Finding no reversible error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE