**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT KNOXVILLE**
**SEPTEMBER SESSION, 1998**

FILED

November 5, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | No. 03C01-9802-CR-00060 |
| **Appellee** | ) | |
| | ) | **KNOX COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. Richard Baumgartner, Judge** |
| **SAMUEL POOLE,** | ) | |
| | ) | **(Aggravated Robbery)** |
| **Appellant** | ) | |

For the Appellant:

**Paul Hensley**
625 South Gay Street
Suite 640
Knoxville, TN 37902

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Elizabeth B. Marney**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Randall E. Nichols**
District Attorney General

**Marsha Selecman**
Asst. District Attorney General
City-County Building
Knoxville, TN 37902

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## OPINION

The appellant, Samuel Poole, appeals his conviction by a Knox County jury of one count of aggravated robbery, for which he received a sentence of ten years imprisonment in the Department of Correction. In this appeal as of right, the appellant raises three issues for our review:

> I. Whether the evidence is sufficient to support his conviction;
>
> II. Whether the trial court properly declined to clarify an instruction in the charge upon request by the jury; and
>
> III. Whether the trial court properly admitted testimony regarding a prior bad act of the appellant.

After review of the record before this court, the judgment of conviction is affirmed.

## Background

Shortly before midnight on Saturday, October 15, 1994, William Faulkner and his friend, Antonio Moore, traveled, in Faulkner's 1989 Hyundai Sonata, to Austin East High School in Knoxville to pick up Faulkner's younger sister, Carmine, from a school related social event. Once Faulkner had picked up his sister, the trio picked up Ereeka Brown, a friend of Carmine's, and then proceeded to a nearby Bi-Lo Market. The group arrived at the convenience store at approximately 12:30 a.m.

Carmine Faulkner and Ereeka Brown went into the store to purchase sodas. Meanwhile, William Faulkner got out of his car to talk with an acquaintance, Greg Ballenger, whom he had noticed was at the store. While Faulkner was speaking with Ballenger at the side of the building, the appellant approached, "pulled a gun on [Faulkner]," and demanded Faulkner's jewelry. The appellant pointed the gun at

2

Faulkner's head and another individual attempted to take gold chains from the victim's neck. Faulkner testified that "I thought he was going to kill me." When the other individual loosened his grip, Faulkner started running. In his effort to escape, the victim was hit in the head with the gun wielded by the appellant. Injured and with "blood all over [his] shirt," Faulkner ran into the convenience store. The injury to his head required stitches.

Carmen Faulkner, Ereeka Brown, and Antonio Moore, who were waiting in Faulkner's car, saw Faulkner run past them into the store. They noticed blood on Faulkner's head. Carmen stated that her brother looked scared and was "hollering" something about a robbery. As the group was observing Faulkner, the appellant ran up to Faulkner's car, pointed his gun at the window, and ordered the passengers out of the car. Antonio Moore, who was in the front passenger seat, attempted to slide over to the driver's seat in an effort to escape. However, he was unsuccessful and the three passengers were forced out of the car at gunpoint. Carmen and Ereeka ran into the store. The appellant then ordered Antonio Moore to empty his pockets. Moore complied, giving the appellant the eight dollars on his person. The appellant then struck Moore on the head, knocking off his glasses and causing him to fall to the ground. Frightened by the experience, Moore "just took off running . . . and . . .ran all the way home." While Faulkner watched from inside the store, the appellant drove away in Faulkner's vehicle.

Faulkner's vehicle was recovered, thirteen days later, by the Knoxville Police Department. The stereo system had been taken out of the car, a beeper was missing, and there were cigarette burns in the car seats.

At trial, five witnesses positively identified the appellant as the robber. The appellant was described by the eyewitnesses as being an African-American male, approximately 5'9", 150 pounds, black hair, brown eyes, and wearing a black

3

Houston Oilers starter jacket.  William Faulkner, who had previously identified the perpetrator from a photo lineup, denied that he had described the robber as having a "box-style haircut."  Rather, Faulkner testified that he had told the police officers that the robber had "like a small fro," "short on the sides" and "nappy."  Faulkner could not recall whether the appellant had facial hair on the night of the robbery.  Carmine Faulkner confirmed her brother's identification of the appellant as the perpetrator.  She also testified that the appellant had "a little fro," and not a box hairstyle.  She did not notice whether the appellant had facial hair.  Ereeka Brown and Antonio Moore, likewise, identified the appellant as the perpetrator.  Finally, Greg Ballenger testified that he knew the appellant prior to the robbery and identified him as the perpetrator.

In his defense, the appellant presented the testimony of Paul Lane and Dan Crenshaw, officers with the Knoxville Police Department.  Officer Lane testified that the offense report indicated that both William Faulkner and Antonio Moore described the appellant as having a box-style haircut, *i.e.*, "short on the sides long on the top."  The report also indicated that the robber had facial hair.  Officer Crenshaw stated that he retrieved latent fingerprints from the recovered 1989 Hyundai.  He testified that the appellant's prints did not match those removed from the vehicle.  He explained, however, that it was very difficult to remove prints from an automobile.

The appellant also testified.  He stated that, on the night of the robbery, he had gone to the Bi-Lo market to purchase some cigars.  When he was leaving the store, Greg Ballenger approached him and asked if he had "any weed." Specifically, Ballenger asked whether the appellant could sell him a "dime bag," or, ten dollars worth of marijuana.  The appellant replied that he had some "weed."  Ballenger then introduced the appellant to William Faulkner.   The appellant testified that, at this point, he heard footsteps from behind, got nervous, and went home.

4

Based upon this proof, the jury found the appellant guilty of one count of aggravated robbery of William Faulkner.

## I. Sufficiency of the Evidence

The appellant first challenges the sufficiency of the convicting evidence. In support of this argument, the appellant makes two assertions. First, he avers that the evidence is insufficient to establish his identity as the perpetrator of the offense. Second, he asserts that the State failed to prove that "the property was taken from the person of William Faulkner by the use of violence or by putting the person in fear."[1]

An accused challenging the sufficiency of the evidence on appeal has the burden of proving that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn.1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence viewed under these standards was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e).

---

[1]The indictment charged that the appellant ". . . did . . . by violence and by putting William Faulkner in fear, by use of a deadly weapon, take from the person of William Faulkner a 1989 Hyundai Sonata motor vehicle. . . ."

5

## A. Identity

In State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993), perm. to appeal denied, (Tenn. 1994), this court held that the testimony of a victim identifying the perpetrator is sufficient in and of itself to support a conviction. Moreover, the credibility of eyewitness testimony identifying the accused as the perpetrator of the criminal offense for which he stands trial is a question of fact for the determination of the jury upon consideration of all competent proof. Strickland, 885 S.W.2d at 87 (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)); see also State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981). In addition to William Faulkner, four eyewitnesses, identified the appellant as the perpetrator. Although eyewitness testimony differed from the police offense report in that they denied stating that the robber had a "box haircut" and "facial hair," the jury obviously accredited the eyewitness testimony offered at trial. Accordingly, the proof is more than sufficient to conclude that the appellant was the perpetrator of the charged offense. This issue is without merit.

## B. Taking from the Person of the Victim

The appellant also contends that the proof does not support a conviction for aggravated robbery because the appellant did not establish a taking, by violence or putting in fear, of property from the person of another. He supports his argument by proof that Faulkner was in the convenience store at the time his car was taken. Moreover, he asserts that it is clear that the jury found that "no force was exerted on William Faulkner at the time his automobile was taken."

Aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" accomplished with a deadly weapon or by the display of a deadly weapon. Tenn. Code Ann. §§ 39-13-401(a); 39-13-402(a)(1)(1991). Theft of property is defined as knowingly obtaining or exercising control over property "without the owner's effective consent"

and "with the intent to deprive the owner" of the property. Tenn. Code Ann. § 39-14-103 (1991). Contrary to the appellant's argument, aggravated robbery does not involve a taking from the person. See State v. Nix, 922 S.W.2d 894, 900 (Tenn. Crim. App. 1995), perm. to appeal denied, (Tenn. 1996). As this court held in State v. Nix, "if an offender, with the intent to deprive the owner, asserts control over property by means of the owner or possessor being removed from the presence of the property by force or fear, the offense of robbery is committed to the same degree that it is if the offender carries the property away from the victim's presence." Nix, 922 S.W.2d at 901.

In the present case, the appellant threatened Faulkner with a weapon, while attempting to rob him of his jewelry. When Faulkner attempted to escape, the appellant hit him on the head with the gun. Seizing the opportunity to flee, Faulkner started running toward the convenience store. The appellant apparently pursued, but, rather than following Faulkner inside the store, went to Faulkner's vehicle where he forced the remaining passengers out of the car and proceeded to steal the car. Faulkner observed the taking of his automobile from within the grocery store. Clearly, the jury could have concluded from the proof that the appellant obtained possession of Faulkner's automobile by separating the victim from his vehicle by the exercise of force or fear. Under these circumstances, the jury was entitled to find the appellant guilty of aggravated robbery.[2] This issue is without merit.

## II. Refusal to Clarify Instruction

Next, the appellant contends that the trial court committed error by refusing to offer guidance to the jury when it was obvious that the jury did not understand the

---

[2]The trial court properly instructed the jury as to the elements of aggravated robbery.

7

proffered instructions.[3]  After three hours of deliberation, the jury submitted the

following question:

> We need clarification in element four of Aggravated Robbery.  Does the use of violence and putting the person in fear, need to be directed at the "owner," indicating William of the property."

The trial court responded:[4]

> The only thing that I can do is refer you to the instructions that I have given you.  I don't think it would be appropriate for me to try and clarify in the sense of telling you anything further than the instruction that the court has given you.
>
> What I encourage you to do is . . . read those instructions and attempt to answer any questions you have among yourselves.  That is the only thing I can tell you in response to this question.

Whereupon the jury resumed deliberations[5] and, approximately nineteen minutes

later, returned with a verdict against the appellant.

In criminal cases, it is the duty and obligation of a trial judge, without request,

to instruct the jury as to the law applicable to the evidence as well as to any issues

which the jury must ultimately decide.  Poe v. State, 370 S.W.2d 488, 489 (Tenn.

1963); see also  State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986), cert. denied,

---

[3]The appellant contends that "the State's introduction of evidence of the alleged aggravated robbery of Antonio Moore contributed substantially to the jury's confusion concerning the jury instructions and further that the Court erred in not reminding the jury that Defendant is not charged with the Aggravated Robbery of any other person except William Faulkner when it received the question from the jury."

[4]Prior to responding to the jury's question, the trial court concluded:
[T]he statement, 'The defendant knowingly obtained or exercised control over property owned by William Faulkner,' and . . . 'that the defendant took such property' -- referring to Faulkner's property - - 'from the person of another by the use of violence' - - from the person is referring to the owner of the property.  I mean, they are going to have to sort that out.  I don't think I can give them my analysis of the situation. I don't think it would be appropriate for me to try and give them my analysis of it.

[5]In response to the court's answer, the jury foreperson replied:
I feel like I need -- some of us are not really clear on the way it is presented.  I mean, you know, about the -- and I need to ask you a question. . . .[I]f you can't answer me, it is kind of a -- it kind of puts us in a , what, right where we was before?

Upon which, several jurors commented:
Juror No. 1:  I am okay.  I mean, I don't know.  I think I understand.  I don't know if you all do or not.

Juror No. 3:      Ready to begin.

476 U.S. 1153, 106 S.Ct. 2261 (1986); State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975). The jury has the duty to apply the law contained in the charge of the trial judge to the ultimate facts which it determines exist. See Ford v. State, 101 Tenn. 454, 458, 47 S.W. 703, 705 (1898). Due to the importance of the charge on the role of the jury in reaching its' decision, the accused "is entitled to a clear and distinct exposition of the law of his case as applicable to the facts." Strady v. State, 45 Tenn. (5 Cold.) 300, 307 (1868). In other words, the accused is entitled to have the law pertaining to his case stated plainly to the jury in a manner which enables them to comprehend the principles involved. See Lancaster v. State, 43 Tenn. (3 Cold.) 339, 343 (1866).

If it becomes plain to the trial judge that the jurors did not understand or comprehend the legalese contained in the charge, the trial judge has the authority to give supplemental instructions in response to a question propounded by the jury. Leach v. State, 552 S.W.2d 407, 408 (Tenn. Crim. App. 1977). However, when the answer to the question asked by the jury is clearly articulated in the charge of the trial judge, it is not necessary for the trial judge to give a supplemental instruction. See Burns v. State, 591 S.W.2d 780, 784 (Tenn. Crim. App. 1979); see also State v. Summers, 692 S.W.2d 439 (Tenn. Crim. App. 1985). In the present case, the trial court correctly charged the jury as to the elements of aggravated robbery; the terms were easily understood by the average layperson and the law was clearly articulated in the charge. Accordingly, the trial judge did not err by refusing to clarify the original charge with a supplemental instruction.

We also note that this issue has been waived. No special request was submitted to the court nor was any objection made regarding the failure of the trial judge to give a supplemental instruction. See Tenn. R. App. P. 36(a). Furthermore, this issue has not been properly briefed. Tenn. Ct. Crim. R. App.10; Tenn. R. App. P. 27.

## III. Prior Bad Acts

In the appellant's final issue, he challenges the trial court's denial of his motion *in limine* to exclude testimony concerning the alleged robbery of Antonio Moore.[6] Specifically, the appellant based his motion on the fact that the testimony is irrelevant, highly prejudicial, and is likely to confuse the jury in deciding whether an offense was committed against William Faulkner.

In denying the motion, the trial court found:

Basically, this is uncharged conduct or 404-type evidence. . . . I think that all of those events are part and parcel of the offense that he is charged with. Now, it is true that he was not charged with the robbery of Mr. Moore. However, the question is -- and, of course, the main issue here is identity, which is one of the things that is always an issue in 404-type analysis. Had he been charged with the offense of robbery of Mr. Moore, clearly, in my mind that case would have been properly joined for trial as a common motive or scheme, continuing series of events, and the evidence of that would have been evidence introducible at the trial in which Mr. Faulkner was the victim.

So I think that, under a 404(b) analysis, this is the continuation of a continuous series of events that are required to prove the actual robbery of Mr. Faulkner; that part and parcel of those events are the events involving Mr. Moore, including the robbery. I agree with the State that the issue of whether or not the robbery of Mr. Moore would have had an impact on his ability to recall the events and identify the defendant. . . .

The court continued:

But the fact is that this is nothing more than an eyewitness. Mr. Moore is an eyewitness to the part of the events that occurred or allegedly occurred at this Bi-Lo, and identity is an issue. I agree with that . . . . But my point is that, under the analysis, as I understand the law, the issue of continuing common scheme or plan, absence of mistake, those are reasons that this type of evidence comes in. It is an exception, of course, and I think all of those things - - all of those issues justify in this case the testimony of Mr. Moore.

---

[6]The appellant was never charged with the robbery of eight dollars from the person of Antonio Moore. The State offered no explanation as to why the appellant was not charged with this incident. Specifically, the prosecutor stated, "Now, why he wasn't charged with that, I don't know. Maybe it was a minuscule amount. I didn't draft the indictment. I didn't present the case to the grand jury. . . . [H]ad we gotten this motion earlier and thought there was going to be any problem, we might could have resubmitted it to the grand jury, and I think that would have been to the defendant's detriment to have another count in the indictment to show this robbery of a small amount of money from Mr. Moore."

10

Clearly, he can testify about what Poole did. . . . What I am saying is he can go on and add the fact that he in fact robbed him. Now, I will [instruct] them that he is not on trial for the robbery of Mr. Moore. I will tell the jury that. But I think it is part and parcel of all the events that took place out there, and for the reasons previously stated - - . . . under the analysis of the case law of Rule 404 that they come in. So I am going to let them in.

Initially, we note that the appellant has waived this issue for failure to properly brief the issue before this court. See Tenn. Ct. Crim. R. App. 10(b); Tenn. R. App. P. 27(a)(7). Notwithstanding waiver, we elect to consider the issue on its merits. In reviewing this issue, we are mindful that the admissibility of evidence rests largely within the discretion of the trial court and its findings will not be disturbed on appeal absent an abuse of that discretion. See State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997) (citations omitted). This standard is applicable even where the proffered testimony falls under the restrictions of Tenn. R. Evid. 404(b), governing evidence of other crimes, wrongs, or acts of the accused, provided that the trial court complies substantially with the procedural requirements of the rule. See Dubose, 953 S.W.2d at 652. In the present case, the trial court complied with the procedural requirements of Rule 404(b), thus, the abuse of discretion standard applies.

Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Nonetheless, such evidence may be admissible for other purposes. See Tenn. R. Evid. 404(b). Specifically, "evidence of uncharged crimes may be admissible: (1) to prove identity (including motive and common scheme or plan); (2) to prove intent; and (3) to rebut a claim of mistake or accident if asserted as a defense." State v. McCary, 922 S.W.2d 511, 514 (Tenn. 1996) (citation omitted).

11

In the present case, the appellant's taking of eight dollars from the person of Antonio Moore by force constitutes an uncharged offense and, thus, a prior bad act under Rule 404(b). The trial court concluded that the uncharged crime against Antonio Moore was part of a single transaction and that identity was a material issue before the jury. There is no doubt that the uncharged act and the robbery of William Faulkner occurred within a single criminal episode. See State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995). Proof of acts occurring before and after the offense at issue are admissible to provide the trier of fact with "the full story" and are relevant in establishing the identity of the accused. Hoyt, 928 S.W.2d at 943 (citing N. Cohen, *Tennessee Law of Evidence*, § 404.11 (2nd ed. 1990). E.g., State v. Payne, 791 S.W.2d 10, 16 (Tenn. 1990), *aff'd by*, Payne v. United States, 501 U.S. 808, 111 S.Ct. 2597 (1991)); see also McCary, 922 S.W.2d at 514. Thus, we conclude that the uncharged offense against Antonio Moore meets an exception to the general bar against evidence of prior bad acts. Moreover, we hold that the evidence is relevant to the issues before the jury and that the probative value of the evidence is not outweighed by the danger of unfair prejudice. See Tenn. R. Evid. 401, 402, 403. Accordingly, we conclude that the trial court did not abuse its discretion in permitting the testimony relative to the uncharged aggravated robbery of Antonio Moore. This issue is without merit.

After review of the record and issues before this court, we find no error of law committed by the trial court requiring reversal. The judgment of conviction entered by the trial court is affirmed.

_____
DAVID G. HAYES, Judge


CONCUR:


_____
JOHN H. PEAY, Judge


_____
JOSEPH M. TIPTON, Judge


13