IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
MARCH 1999 SESSION

FILED

October 8, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE**, | * | C.C.A. NO. 03C01-9809-CC-00318 |
| Appellee, | * | BLOUNT COUNTY |
| v. | * | Hon. D. Kelly Thomas, Jr., Judge |
| **RONALD D. CORRELL**, | * | (Aggravated Assault, Vandalism, Leaving the Scene of an Accident) |
| Appellant. | * | |

For Appellant:

F.D. Gibson
116 E. Harper St.
Maryville, TN 37804

For Appellee:

Paul G. Summers
Attorney General and Reporter
450 James Robertson Parkway
Nashville, TN 37243-0493

Ellen Pollack
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243

Lisa McKenzie
Assistant District Attorney General
363 Court St.
Maryville, TN 37804

OPINION FILED: _____

AFFIRMED

NORMA MCGEE OGLE, JUDGE

## OPINION

On May 7, 1998, the appellant, Ronald D. Correll, was convicted by a jury in the Blount County Circuit Court of aggravated assault, vandalism, leaving the scene of an accident, and driving on a suspended license.[1] The trial court imposed an effective sentence of four years incarceration in the Tennessee Department of Correction, suspending all but six months of the appellant's sentence and placing him on supervised probation for the remainder.

In this appeal as of right, the appellant presents the following issues for our review:

> (I) Whether the evidence is sufficient to sustain the appellant's convictions of aggravated assault, vandalism, and leaving the scene of an accident;
>
> (II) With respect to the appellant's conviction for leaving the scene of an accident, whether the trial court erred by instructing the jury on the definition of accident;
>
> (III) With respect to the appellant's conviction of aggravated assault, whether the trial court erred by failing to charge the jury with the lesser included offense of assault;
>
> (IV) Whether the trial court properly instructed the jury on the definition of reasonable doubt; and
>
> (V) Whether the appellant's multiple convictions for aggravated assault, vandalism, and leaving the scene of an accident violate principles of double jeopardy or due process.

Following a review of the record and the parties' briefs, we affirm the judgment of the trial court.

## I. Factual Background

---

[1] The appellant does not appeal his conviction for driving on a suspended license.

The present offenses occurred following an altercation between the appellant and his ex-wife, Rhonda Correll. The record reflects that, at the time of these offenses, the appellant and Ms. Correll had been divorced for more than two years and maintained separate residences. They had two sons who visited the appellant every other weekend. Ms. Correll recounted at the appellant's trial that, in the morning hours of Friday, September 6, 1996, she went to the appellant's residence to finalize arrangements for the children's visitation that weekend. The appellant informed Ms. Correll that he would be unable to care for the children because he had a date that evening. Following a heated argument, Ms. Correll left the residence.

Later that morning, Ms. Correll returned to the appellant's residence when the appellant was absent from home. Ms. Correll had a key to the residence, because the appellant had asked her to do his laundry. Accordingly, she was able to retrieve a television set she had loaned to the appellant for their children's use during visitation. Before departing, she left a note and the house keys for the appellant.

Ultimately, the appellant's aunt agreed to care for the children that weekend. Therefore, in the late afternoon, Ms. Correll left the children at the aunt's home, completed several errands, and drove to her boyfriend's home. Her boyfriend had not yet returned from work, and Ms. Correll decided to await his return in his driveway. While she was waiting, the appellant drove into the driveway, jumped from his truck, and began "screaming" about the television and their earlier argument concerning visitation. Ms. Correll closed the door of her car and attempted to roll up her window. However, the appellant forced his arm through the open window, preventing Ms. Correll from closing the window. He then struck Ms.

3

Correll in the jaw, opened the car door, and pushed her "down between the seats." Ms. Correll was only able to extract herself from the appellant's grasp by kicking the appellant and again closing the car door.

At this point, in order to convince the appellant to leave in his truck, Ms. Correll told the appellant that she would follow him to another location. The appellant returned to his truck and began to leave but drove back into the driveway when Ms. Correll failed to follow him. The appellant again jumped from his truck, this time brandishing a knife. While screaming obscenities, he punctured both front tires of Ms. Correll's car. The appellant then threatened, "I've got a gun in the truck and I'm going to blow your brains out." Nevertheless, at Ms. Correll's entreaty, he again returned to his truck and allowed her to leave.

Ms. Correll left her boyfriend's driveway and drove onto the road. In an effort to attract attention and obtain assistance, Ms. Correll began honking her car horn. The appellant then began ramming the back of her car with his truck, pushing her car off the road into a ditch. When a couple stopped to offer assistance, the appellant immediately fled.

Because her car was still operational and because the appellant had departed, Ms. Correll declined the couple's assistance and decided to return to her boyfriend's residence. However, as she began to turn her car around, the appellant reappeared in his truck. He screamed, "Watch this" and rammed the side of her car, before again fleeing the scene. Ms. Correll testified that, when the appellant reappeared and screamed at her, she became "scared."

Additionally, Ms. Correll testified that, at the time of these offenses,

4

she was driving a white Chevette. She stated that she had bought the car from her sister, but had never registered her ownership. Following these offenses and the consequent damage to the Chevette, she purchased a new vehicle.

The State also presented the testimony of Charles Ward. Mr. Ward stated that, on September 6, 1996, he was at home in his front yard when he heard a noise and observed a white truck pushing a small white car across two driveways, including his own. Mr. Ward noted that the left front of the truck was pushing into the driver's side of the car. At trial, Mr. Ward identified the appellant as the driver of the truck and also testified that, when he approached the truck, the appellant claimed that the driver of the car had damaged his truck first. Mr. Ward noticed that there was a dent next to the door on the driver's side of the truck.

Officer Robert Schafer, an officer employed by the Blount County Sheriff's Department, testified on behalf of the State. He recounted that, on September 6, 1996, he was dispatched to Six Mile Road in Blount County. Upon his arrival, Officer Schafer observed a white Chevette "turned sideways in a ditch." Ms. Correll was standing beside the vehicle and "had a few cuts on her face, glass in her hair, [and] was visibly shaken and upset." Ms. Correll informed Officer Schafer that a white truck had struck her vehicle. Officer Schafer noticed extensive damage on the left side of Ms. Correll's vehicle. He testified that he observed no damage to the front of Ms. Correll's vehicle or any other evidence that Ms. Correll had herself rammed another vehicle with the Chevette.

The appellant presented evidence at trial, including a certified copy of a certificate of title and registration obtained from the Blount County Clerk. The document reflects that the white Chevette involved in the incident was registered in

5

1996 to Sonya Bell, Ms. Correll's sister.

The appellant also presented the testimony of Charles Henry Ward, the son of the State's witness, Charles Ward. He testified that he knew the appellant and that he observed the appellant's truck on the morning of September 6, 1996, prior to the instant offenses. He stated that, at that time, the appellant's truck was not damaged in any way. Later that morning, he arrived at the scene of the appellant's offenses as the appellant was leaving. He approached Ms. Correll's car and lingered at the scene while Officer Schafer interviewed Ms. Correll. At some point, at Ms. Correll's request, he removed a cooler containing unopened cans or bottles of beer from her car. He testified at trial that Ms. Correll "smelled like she had been drinking, but, you know, I couldn't tell that, because you know, I really didn't - - I just got the cooler out of the back of the car."

Additionally, Anna Ward, Charles Henry Ward's wife, testified on behalf of the appellant. She stated that, on September 6, 1996, she lived on Six Mile Road and approached Ms. Correll immediately after the incident in order to provide her access to a telephone. Ms. Ward noticed that Ms. Correll "smelled like beer" and that there was a cooler in the trunk of her car. Ms. Ward further testified that, two or three days after the incident, Ms. Correll confessed to her that she had rammed the appellant's truck with her car first.

Finally, the appellant presented the testimony of his wife, Edwina Correll. She testified that she observed the appellant's truck three days before these offenses and could not recall any damage to the body of the truck. However, approximately one week after the offenses, she noticed damage on the driver's side of the truck. In contrast, the front of the appellant's truck did not appear damaged.

6

## II. Analysis

### A. Sufficiency of the Evidence

The appellant contends that the record contains insufficient evidence to sustain his convictions for aggravated assault, vandalism, and leaving the scene of an accident. In Tennessee, appellate courts accord considerable weight to the verdict of a jury in a criminal trial. In essence, a jury conviction removes the presumption of the defendant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that "no reasonable trier of fact" could have found the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

With respect to the appellant's conviction of aggravated assault, the applicable statute provides:

> (a) A person commits aggravated assault who:
> (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
> (B) Uses or displays a deadly weapon; . . . .

Tenn. Code Ann. § 39-13-102 (1995 Supp.). Tenn. Code Ann. § 39-13-101(a)(2)

(1997) provides that a person commits assault who intentionally or knowingly causes another to reasonably fear imminent bodily injury.  In this case, the jury convicted the appellant of aggravated assault pursuant to an indictment charging the appellant with "unlawfully and knowingly by the use of a deadly weapon, to wit: A motor vehicle, caus[ing] Rhonda Correll to reasonably fear imminent bodily injury by striking her vehicle while she was inside . . . ."

We conclude that the State adduced ample evidence to convict the appellant of aggravated assault as charged in the indictment.  In reaching this conclusion, we note that a truck can be a deadly weapon within the meaning of Tenn. Code Ann. § 39-13-102. State v. Tate, 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995).  Moreover, as previously noted, Ms. Correll testified at trial that the appellant deliberately and on two occasions used his truck to ram her car while she was driving the car, thereby forcing her car off the road.  Ms. Correll further testified that, on the second occasion, she became "scared" of the appellant.  Charles Ward corroborated her testimony concerning the second occasion, stating that he witnessed the appellant's truck pushing Ms. Correll's car across two driveways.

With respect to the appellant's conviction of vandalism, Tenn. Code Ann. § 39-14-408 (1991) provides:

> (a)  Any person who knowingly causes damage to or the destruction of any real or personal property of another. . . knowing that the person does not have the owner's effective consent is guilty of an offense under this section.

The statute further provides at section (c)(1) that "[a]cts of vandalism are to be valued according to the provisions of § 39-11-106(a)(36) and punished as theft under § 39-14-105." Tenn. Code Ann. § 39-14-408.  Tenn. Code Ann. § 39-11-106(a)(36)(A)(I) (1997) defines "value" as "[t]he fair market value of the property . . .

8

at the time and place of the offense . . . ." Under Tenn. Code. Ann. § 39-14-105 (1997), the value of any vandalized property will determine the grade of the offense.

In this case, the jury convicted the appellant of vandalism of property worth less than five hundred dollars ($500.00).[2] Again, Ms. Correll testified at trial that, prior to these offenses, she had purchased the white Chevette from her sister. She also testified that the appellant did not have her consent to damage the car. Moreover, the record reflects that the appellant slashed the Chevette's front tires with a knife and rammed the side of the Chevette with his truck, denting the side of the car and breaking a car window. Due to the appellant's actions, Ms. Correll was forced to purchase a new vehicle.

The appellant argues that, because the car was registered in Sonya Bell's name, the State failed to prove beyond a reasonable doubt that Ms. Correll was the owner of the car and, therefore, that the appellant did not have the owner's consent to damage the car. However, for purposes of the vandalism statute, Tenn. Code Ann. § 39-14-401(3) (1997) defines an "owner" as "a person in lawful possession of property, whether the possession is actual or constructive." See also State v. Katz, No. 03C01-9704-CC-00150, 1998 WL 334378, at *3 (Tenn. Crim. App. at Knoxville, June 25, 1998), perm to appeal denied (Tenn. 1999). We conclude that the evidence supports the jury's finding that Ms. Correll was the "owner" of the white Chevette at the time of these offenses.

The appellant also argues that the State failed to establish the value of the white Chevette or the cost of replacing the vehicle, because the State merely

---

[2] The appellant was originally indicted for vandalism of property over one thousand dollars ($1,000.00). However, following a hearing outside the jury's presence and due to the State's lack of evidence, the trial court directed the jury to fix the value of the vandalized property either at less than five hundred dollars ($500) or at more than five hundred dollars ($500).

relied upon Ms. Correll's testimony concerning the damage to the white Chevette and several photographs of the Chevette following these offenses. We disagree. Our supreme court has held that a trier of fact may, from all the evidence presented at trial, determine the fair market value of stolen property. State v. Hamm, 611 S.W.2d 826, 828-29 (Tenn. 1981). Similarly, based upon the evidence adduced in this case, a rational juror could have found beyond a reasonable doubt that the value of the Chevette was less than five hundred dollars. The record before this court supports the appellant's conviction of vandalism worth less than five hundred dollars ($500.00).

With respect to the appellant's conviction of leaving the scene of an accident, Tenn. Code Ann. § 55-10-102(a) (1998) provides:

> The driver of any vehicle involved in an accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of such accident . . . , but shall forthwith return to and in every event shall remain at the scene of such accident until that person has fulfilled the requirements of § 55-10-103.

Tenn. Code. Ann. § 55-10-103 (1998) sets forth the duty of any such driver to provide information and render aid to other individuals involved in the accident.

The appellant essentially argues that the State failed to establish at trial that any "accident" occurred on September 6, 1996, because an "accident" within the meaning of Tenn. Code Ann. § 55-10-102(a) and an intentional or knowing aggravated assault cannot occur simultaneously. However, the appellant's argument depends upon a more limited definition of "accident" than warranted by the applicable statute. We discuss the appropriate definition of "accident" in the succeeding section. In light of this discussion, we conclude that the evidence at trial was sufficient to support the appellant's conviction of leaving the scene of an

10

accident.  This issue is without merit.


**B. Jury Instructions**

### i.  Leaving the Scene of An Accident - The Definition of Accident

The appellant argues that the trial court improperly instructed the jury

on the definition of "accident" for purposes of Tenn. Code Ann. § 55-10-102(a), the

statute setting forth the offense of leaving the scene of an accident.  In this case, the

jury submitted a written question to the trial court, inquiring about the definition of

"accident" under Tennessee law.  In response to this question, the trial court

consulted Black's Law Dictionary 31 (Revised 4th ed. 1968), and provided the

following definition to the jury:

> The word "accident," requiring operator of vehicle to stop
> immediately in case of accident, contemplates any
> situation occurring on the highway wherein he so
> operates his automobile as to cause injury to the property
> or person of another using the same highway.

The appellant contends that, to the extent this definition encompasses intentional

conduct, it does not provide the normal, ordinary meaning of "accident."  Moreover,

the appellant contends that the trial court erred by only instructing the jury on a

portion of the Black's Law Dictionary definition.


Generally, a charge will constitute prejudicial error if "it fails to fairly

submit the legal issues or if it misleads the jury as to the applicable law."  State v.

Hodges, 944 S.W.2d 346, 352 (Tenn.), cert. denied, __U.S. __, 118 S.Ct. 567

(1997).  Thus, in instructing the jury on the applicable law, the trial court must

describe and define the essential elements of each charged offense.  State v.

Cravens, 764 S.W.2d 754, 756 (Tenn. 1989).  However, trial courts are not required

to define or explain words or terms in common use which are understood by

persons of ordinary intelligence.  State v. Summers, 692 S.W.2d 439, 445 (Tenn.

11

Crim. App. 1985). Nevertheless, trial courts may provide supplemental instructions in response to questions by the jury. State v. Forbes, 918 S.W.2d 431, 451 (Tenn. Crim. App. 1995).

Applying these general principles and in light of our prior decision in State v. Bowman, No. 1315, 1991 WL 108755 (Tenn. Crim. App. at Knoxville, June 24, 1991), we conclude that the trial court's instruction to the jury on the definition of "accident" was correct. In Bowman, this court rejected a defendant's identical contention that the word "accident," contained in the leaving the scene of an accident statute, did not encompass intentional conduct. Id. at *4. This court observed that, in making it a crime to leave the scene of an accident, the legislature intended "to assist those who are victims of damage or injury from the operation of automobiles by others." Id. Furthermore, this court concluded that the defendant's contention would defeat this legislative purpose and proceeded to adopt the same Black's Law Dictionary definition of accident used in this case. Id. This issue is without merit.

### ii. Aggravated Assault - The Lesser Offense of Assault

With respect to his conviction of aggravated assault, the appellant challenges the trial court's refusal, in response to his request, to instruct the jury on the lesser offense of assault. A trial judge has a duty to charge the jury as to all the law of each offense included in the indictment. State v. Cleveland, 959 S.W.2d 548, 553 (Tenn. 1997); Tenn. Code Ann. § 40-18-110(a) (1997). Moreover, a defendant has a right to have every issue of fact raised by the evidence and material to his or her defense submitted to the jury on proper instructions. State v. Robinette, No. 03C01-9611-CR-00430, 1997 WL 671889, at * 3 (Tenn. Crim. App. at Knoxville, October 29, 1997). Thus, a defendant has a right to a jury instruction on all lesser

12

included offenses and lesser grades or classes of the charged offenses if the facts are susceptible to an inference of guilt of any of those offenses. State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996); State v. Cutshaw, 967 S.W.2d 332, 341-342 (Tenn. Crim. App. 1997); Tenn. Code Ann. § 40-18-110; Tenn. R. Crim. P. 31(c). An offense is necessarily included in another if the elements of the greater offense include, but are not congruent with, all the elements of the lesser offense. Trusty, 919 S.W.2d at 310. See also State v. Miller, No. 01C01-9703-CC-00087, 1998 WL 601241, at *8 (Tenn. Crim. App. at Nashville, September 11, 1998). Furthermore, an offense is a lesser grade of another offense if both offenses are located in the same section of the statute. Trusty, 919 S.W.2d at 310.

Assault is both a lesser included offense and a lesser grade offense of aggravated assault. Trusty, 919 S.W.2d at 310-11; Tenn. Code Ann. § 39-13-101; Tenn. Code Ann. § 39-13-102. However, the indictment in this case charged, and the evidence at trial established, that the appellant either assaulted Ms. Correll with his truck or he did not assault her at all. A trial court may refuse to instruct a lesser offense if the evidence shows that the defendant is either guilty of the greater offense or not guilty of any offense. Howard, 926 S.W.2d 579, 585 (Tenn. Crim. App. 1996)(citing State v. Stephenson, 878 S.W.2d 530, 550 (Tenn. 1994); State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990); State v. Dulsworth, 781 S.W.2d 277, 287 (Tenn. Crim. App. 1989)). This issue is without merit.

### iii. Jury Instruction on Reasonable Doubt

The appellant contends that the trial court's instruction to the jury on reasonable doubt impermissibly shifted the burden of proof to the appellant, thereby violating his right to due process of law. The trial court provided the following instruction to the jury:

13

> A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in this case *and an inability after such investigation to let the mind rest easily as to the certainty of guilt.*
>
> It is not necessary that the defendant's guilt be proved beyond all possible doubt, as absolute certainty of guilt is not demanded by the law to convict of any criminal charge.
>
> A reasonable doubt is just that -- a doubt that is reasonable after an examination of all the facts of this case.
>
> If you find the state has not proven every element of the offense beyond a reasonable doubt, then you should find the defendant not guilty.

(Emphasis added). The appellant specifically challenges the trial court's inclusion, without qualification, of language concerning an "inability . . . to let the mind rest easily . . . ."

Initially, we note that, with the exception of the "let the mind rest easily" phrase, the trial court's reasonable doubt instruction in this case is identical to Tennessee Pattern Jury Instruction (T.P.I) Crim. No. 2.03(a) (4th ed. 1995).[3] This court has held that T.P.I. Crim. No. 2.03(a) is consistent with principles of due process. State v. Saulsberry, No. 02C01-9710-CR-00406, 1998 WL 892281, at **13-14 (Tenn. Crim. App. at Jackson, December 21, 1998); State v. White, No. 02C01-9710-CR-00384, 1998 WL 376352, at *1 (Tenn. Crim. App. at Jackson), perm to appeal denied, ( Tenn. 1998); State v. Henning, No. 02C01-9703-CC-00126, 1997 WL 661455, at *9 (Tenn. Crim. App. at Jackson, October 24, 1997). Accordingly, we must determine whether the "let the mind rest easily" phrase, by itself, rendered the reasonable doubt jury instruction invalid.

---

[3] The State incorrectly asserts that the jury instruction in this case is entirely identical to T.P.I. Crim. No. 2.03(a).

14

The trial court apparently borrowed the disputed phrase from the "traditional" reasonable doubt jury instruction. T.P.I. Crim. No. 2.03 (4th ed. 1995). Tennessee courts have repeatedly upheld the constitutionality of the traditional instruction. See State v. Hall, 976 S.W.2d 121, 159 (Tenn. 1998), cert. denied, __U.S. __, 119 S.Ct. 1501 (1999); State v. Bush, 942 S.W.2d 489, 520-21 (Tenn.), cert. denied, __U.S.__, 118 S.Ct. 376 (1997); State v. Nichols, 877 S.W.2d 722, 734 (Tenn. 1994). See also Coe v. Bell, 161 F.3d 320, 329 (6th Cir. 1998); Austin v. Bell, 126 F.3d 843, 847 (6th Cir. 1997), cert denied, __U.S.__, 118 S.Ct. 1526 (1998). Nevertheless, the appellant attempts to distinguish those cases from his own, arguing that the jury instructions in those cases qualified the "let the mind rest easily" phrase by requiring "moral certainty" of a defendant's guilt.

In determining whether a jury instruction satisfies the requirements of due process, we must examine the instructions as a whole, without considering particular phrases out of context. Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243 (1994). "[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." Id. (citations omitted). We conclude that the trial court properly instructed the jury on the definition of reasonable doubt. This issue is without merit.

## C. Double Jeopardy

The appellant next asserts that his convictions for aggravated assault, vandalism, and leaving the scene of an accident violate principles of double jeopardy. Initially, we note that the double jeopardy clauses of the United States and Tennessee constitutions guard against three evils: (1) a second prosecution

following an acquittal; (2) a second prosecution following a conviction; and (3) multiple punishments for the same offense. State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996) (citations omitted). The instant case potentially involves the third category, multiple punishments for the same offense.

In Denton, 938 S.W.2d at 379, our supreme court noted that the "multiple punishments" area of double jeopardy law "has presented courts with the greatest challenge." Accordingly, the court established a four-prong test to be applied in resolving double jeopardy challenges in this area:

> (1) A reviewing court should conduct an analysis under Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182 (1932):
>
>> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.
>
> (2) A court should also undertake an analysis of the evidence used to prove the offenses, guided by the principles of Duchac v. State, 505 S.W.2d 237, 239 (Tenn. 1973):
>
>> One test of identity of offenses is whether the same evidence is required to prove them. If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes.
>
> (3) A court should determine whether there were multiple victims or discrete acts.
>
> (4) A court should compare the purposes of the respective statutes.

Id. at 379-81. The court noted that the key issue in multiple punishment cases is legislative intent. Id. at 379. However, the court also emphasized that no one step in the Denton analysis is determinative and that "the results of each must be

16

weighed and considered in relation to each other." Id. at 381.

Applying the Denton analysis in this case, we first conclude that the relevant statutory provisions satisfy the Blockburger test. As noted earlier, a person commits aggravated assault when he intentionally or knowingly and by use of a deadly weapon causes another to reasonably fear imminent bodily injury. Tenn. Code Ann. § 39-13-101, 102. In contrast, a person commits vandalism when he knowingly damages or destroys the personal property of another. Tenn. Code Ann. § 39-14-408. Finally, a person commits the offense of leaving the scene of an accident when he is involved in an accident causing damage to another person's vehicle and fails to stop his vehicle in order to provide the requisite information and assistance. Tenn. Code Ann. § 55-10-102. All three offenses contain unique elements.

Additionally, the State relied upon different evidence to prove each offense beyond a reasonable doubt. First, in proving the charge of aggravated assault, the State adduced testimony that the appellant rammed Ms. Correll's car with his truck; the appellant then fled but later reappeared, shouting "Watch this!" and causing Ms. Correl to fear another collision. Second, in order to prove the charge of vandalism, the State adduced testimony that the appellant in fact collided with Ms. Correll's car a second time; Ms. Correll owned the car and did not consent to the appellant's conduct; and the appellant's conduct inflicted considerable damage to Ms. Correll's car. Third, in order to establish the appellant's guilt of leaving the scene of an accident, the State not only presented proof that there was an accident, but also that the appellant left the scene of the accident without providing the requisite information or assistance. Thus, an analysis of the evidence used to prove the offenses, guided by the principles of Duchac, 505 S.W.2d at 239,

17

weigh against a finding of double jeopardy.

Similarly, an examination of the remaining factors requires an affirmance of the appellant's convictions. Although there was only one victim of the appellant's offenses, there were multiple discrete acts as delineated above. Moreover, each of the applicable statutes serves a distinct purpose. The aggravated assault statute is intended to both deter and punish threatening conduct against another person, including the use of a deadly weapon, which inspires fear of bodily injury. The vandalism statute is instead intended to both deter and punish the destruction of property. Finally, as noted earlier, the statute setting forth the offense of leaving the scene of an accident is clearly intended to "assist those who are victims of damage or injury from the operation of automobiles by others." Bowman, No. 1315, 1991 WL 108755, at *4. More specifically, the statute is intended to encourage those involved in automobile accidents to stop and render assistance to other affected motorists and to provide information for the purpose of facilitating any investigation of the accident.

Having weighed and considered the various Denton factors, we conclude that the appellant's convictions for aggravated assault, vandalism, and leaving the scene of an accident do not violate principles of double jeopardy. This issue is without merit.

D.    **Due Process**

The appellant also argues that his multiple convictions for aggravated assault, vandalism, and leaving the scene of an accident violate due process pursuant to State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). In Anthony, our supreme court held that the due process clause of the Tennessee Constitution

18

prohibits convictions for both kidnapping and another felony when the kidnapping was essentially incidental to the accompanying felony. 817 S.W.2d at 306-307. Moreover, in Anthony, the court indicated that a due process review necessarily includes an analysis of legislative intent. 817 S.W.2d at 306.

We conclude that the due process concerns addressed in Anthony are not implicated in this case. Unlike the robbery and kidnapping offenses in Anthony, proving the offense of aggravated assault does not inherently prove the statutory elements of the other offenses. The damage to Ms. Correll's car caused by the appellant was not necessary or incidental for the commission of the aggravated assault. Likewise, the appellant's departure from the scene of the accident was not necessary or incidental for the commission of the aggravated assault. We conclude that the legislature intended independent prosecutions for the conduct underlying each of the appellant's convictions. This issue without merit.

Accordingly, the judgment of the trial court is affirmed.

_____
Norma McGee Ogle, Judge

CONCUR:

_____
Gary R. Wade, Presiding Judge


_____
Cornelia A. Clark, Special Judge

19